763 So.2d 17 (2000)
FRENCH QUARTER CITIZENS FOR the PRESERVATION OF RESIDENTIAL QUALITY, INC.
v.
NEW ORLEANS CITY PLANNING COMMISSION, The Board of Zoning Adjustments and/or The City of New Orleans, et al.
No. 99-CA-2154.
Court of Appeal of Louisiana, Fourth Circuit.
April 12, 2000.
Writ Denied May 26, 2000.
Stuart H. Smith, Michael G. Stag, Sacks & Smith, L.L.C., New Orleans, LA, Counsel for Plaintiff/Appellant.
*18 William D. Aaron, Jr., Sally D. Fleming, Goins Aaron, P.L.C., New Orleans, LA, and Michael F. Weiner, Phelps Dunbar, L.L.P., New Orleans, LA, and Charles L. Stern, Jr., Randy Opotowsky, Steeg and O'Connor, L.L.C., New Orleans, LA, Counsel for Defendant/Appellee.
Mavis S. Early, City Attorney, Deborah L. Wilson, Chief Deputy City Attorney, Evelyn Pugh, Deputy City Attorney, Lawrence H. Martin, Assistant City Attorney, New Orleans, LA, Counsel for Defendants/Appellees.
(Court composed of Judge JOAN BERNARD ARMSTRONG, Judge MIRIAM G. WALTZER, Judge JAMES F. McKAY, III.)
ARMSTRONG, Judge.
This is a zoning case. The owner of a property in the French Quarter sought a variance to increase the amount of floor space that could be used by a drugstore. The Board of Zoning Adjustments ("BZA") approved the variance with a restrictive condition that the actual selling area open to the public could not exceed a specified amount. A French Quarter citizens group brought suit for judicial review of the BZA action (and certain related relief). The trial court found that the BZA's action was not arbitrary, capricious or an abuse of discretion and so denied relief to the plaintiff citizen group. We agree with the trial court and so we will affirm.
The property owner, The French Eighth, a Louisiana Partnership, owns two contiguous buildings in the French Quarter. The property previously had been used by a restaurant or nightclub named The Fashion Café and, prior to that, had been used for a Shoney's restaurant. The French Eighth leased the property to Walgreen Louisiana Company, Inc. for use as a Walgreen's drugstore.
Under the Comprehensive Zoning Ordinance of the City of New Orleans ("CZO") the property is located in the VCC-2 Vieux Carre' Commercial District. Section 8.5.1 of CZO provides that: "the purpose of the [VCC-2] district is to permit more intensive commercial uses than in the VCC-1 District, yet protect the historic character of the Vieux Carré. The district includes the major shopping area of the Vieux Carré." CZO Section 8.5.3.9 states in pertinent part that permitted uses in the VCC-2 include: "Retail stores and shops, except pawnshops, including food and grocery stores, but no such store or shop shall occupy more than 7,500 square feet of floor area."
It is uncontested that the Walgreen's drugstore is a permitted use under CZO Section 8.5.3.9. The issues in this case arise from CZO Section's 7,500 square foot limitation on floor area. The French Eighth sought a variance allowing Walgreen's to use an additional 5,000 square feet of floor space for a total of 12,500 square feet. However, the French Eight's request specified that only 6,700 square feet, located on the ground floor, would be used as actual selling area and would be open to the public. The balance of the square footage to be used by Walgreen's, located on the second floor, would be used for administrative purposes (apparently offices and an employee break area) and for storage and would not be open to the public. The BZA allowed the 5,000 square foot variance with the provision that no more than 6,700 square feet would be used as "retail area" (i.e. the selling area open to the public). It is that decision of the BZA, allowing the variance, which is attacked by plaintiff-appellant French Quarter Citizens for the Preservation of Residential Quality, Inc.
The plaintiff-appellant's first argument on appeal is that we should subject the BZA's decision to "strict scrutiny" because the property at issue in this case is located in the French Quarter. But, the plaintiff-appellant cites no legal authority which calls for such "strict scrutiny". In fact, to the contrary, this court has repeatedly held that the decisions of the BZA, while subject to judicial review under *19 La.R.S. 33:4727(e), are subject to a presumption of validity and are subject to judicial review only as to whether they are arbitrary, capricious or an abuse of discretion. Curran v. Board of Zoning Adjustments, 90-1441 (La.App. 4 Cir. 04/16/91), 580 So.2d 417, 418, writ denied, 584 So.2d 679 (La.1991); Lake Forest Inc. v. Board of Zoning Adjustments of City of New Orleans, 487 So.2d 133, 135 (La.App. 4 Cir. 4/11/86), writ denied, 496 So.2d 1030 (La. 1986); Cross v. City of New Orleans, 446 So.2d 1253, 1255 (La.App. 4 Cir. 2/9/84), writ denied, 449 So.2d 1359 (La.1984). The reviewing court may not simply substitute its own judgment for that of the BZA. Id. This standard of review has been applied to BZA decisions affecting property in the French Quarter. State ex rel. Phillips v. Board of Zoning Adjustments of City of New Orleans, 197 So.2d 916, 918 (La.App. 4 Cir. 4/3/67).
The plaintiff-appellant's second argument on appeal is that the BZA did not have "authority/jurisdiction" to grant the variance at issue. We believe that it is incontestable that, at least as a general matter, the BZA has authority and jurisdiction to grant variances such as the one in the present case under both La.R.S. 33:4727 and under Article 14 of the CZO. The plaintiff-appellant argues, however, that CZO Sections 14.4 and 14.6 combine to limit the power of the BZA to grant variances of the type at issue in this case to the procedural context of administrative appeals to the BZA. The plaintiff-appellant then argues that this case did not involve an administrative "appeal" to the BZA but instead involved a "request for variance" to the BZA. The short answer to this procedural argument is that the BZA's "Notice of Disposition of Zoning Case" (i.e. judgment) states that the French Eighth's proceeding before the BZA is an "appeal". We think that the BZA is the best judge of the proper characterization of its own proceeding and of its own standard procedures and, so long as due process is protected by lawful, orderly, fair procedures, we will not second-guess the BZA on such procedural fine points. We think it is readily apparent that both the applicable statute and the CZO contemplate that the BZA will have authority and jurisdiction over issues such as those in the present case and that the real issue is whether the BZA exercised its authority and jurisdiction in a way that was arbitrary or capricious or constituted an abuse of discretion.
The plaintiff-appellant's third argument on appeal is that there was not sufficient hardship or practical difficulty to the French Eighth and/or Walgreen's so as to justify the variance given. The plaintiff-appellants' fourth argument on appeal is that the BZA did not properly apply the CZO's standards for the granting of variances. Additionally, some of the points advanced in the plaintiff-appellant's briefs under the heading of its second argument (alleged lack of "authority/jurisdiction") are really directed at whether the BZA erred in deciding to grant the variance at issue. We will consider all of these arguments together because they all implicate the same limited set of operative facts.
The BZA may "vary or modify the application" of the CZO "where there are practical difficulties or necessary hardships in the way of carrying out the strict letter of the ordinance" although "the spirit of the ordinance shall be observed". La. R.S. 33:4727 C(3)(c). Article 14 of the CZO reiterates that variances may be granted to avoid unnecessary hardship or practical difficulty so long as the variance granted is in harmony with the general purpose and intent of the CZO. Article 14 of the CZO also provides a list of standards for the BZA's granting of variances.
The crux of this case is whether the BZA erred in determining that the variance at issue was appropriate under the terms of La. R.S. 33:4727 C(3)(c) and the CZO. Before passing upon the issue of whether the BZA so erred, we note two very important points. First, under the legal authorities cited above, we can review the BZA's decision only to determine *20 whether it is arbitrary, capricious or an abuse of discretion. While our own opinion of the merits might vary from that of the BZA, we have no authority to simply substitute our own judgment for that of the BZA. Indeed, the BZA's decision is entitled to a presumption of validity. Second, the only matter before us is the decision of the BZA to grant the variance allowing an additional 5,000 square feet to be used for a drugstore (with no more than 6,700 square feet in total open to the public as actual selling area). The issue of whether or not a drugstore may be operated at all at the location is not before us. Thus, arguments based upon the desirability of a "national chain" drugstore at the location in question, or whether the drugstore will sell T-shirts and souvenirs to tourists, do not go to the dispositive issue in the present appeal.
The BZA received a Staff Report which appears to have given a good recitation of the relevant facts as well as an analysis of whether the variance should be granted and a staff recommendation in favor of granting the variance. The BZA conducted a public hearing and we have reviewed the transcript of that hearing.
Representatives of the French Eighth and Walgreen's spoke as did an architect engaged by them. Also, French Quarter residents and a French Quarter residents association spoke. The BZA members questioned the speakers and discussed the issue at some length and clarified or corrected some factual matters. The Staff Report was referred to and, while the BZA's ultimate decision varied only slightly from the staff recommendation, it is clear from the hearing that the Staff Report was not simply rubber-stamped by the BZA.
Based upon the Staff Report and the discussion at the BZA's hearing, it is apparent that a few important facts drove the decision to grant the variance. First, the variance was sought and was granted upon the basis that no more than 6,700 square feet of the total 12,500 square feet allowed the drugstore, will be used as selling area and be open to the public. Thus, whatever are the exact purposes of the CZO's 7,500 square foot limitation upon retail stores (e.g. appearance of commercialism, etc.), those purposes are surely not compromised by allowing the drugstore 5,000 square feet extra that will be used for administrative and storage purposes and will not be open to the public. Accordingly, this is a case in which relief from the strict letter of the CZO will not violate the spirit of that ordinance. Second, the 5,000 feet of second floor space cannot, as a practical matter, be leased separately from the other space leased by Walgreen's. Apparently, this is based upon prior failures of second-floor retail space in the area as well as the required location of certain stairs needed for firesafety. Consequently, if Walgreen's is not allowed to use the 5,000 Square foot of space in question, then the space will be left empty and derelict. Such a waste of substantial and otherwise useful space would, of course, be a significant hardship to the owner. Third, the Staff Report states that the drugstore will provide "a needed retail use" in the locality and implies that allowing the variance is necessary to, or at least will facilitate, the opening of the drugstore. Overall, it appears that the BZA had substantial, good and rational reasons for allowing the variance at issue. The variance does not thwart the purposes of the CZO, it allows property to be put to use instead of left vacant and it facilitates the establishment of a retail use believed to be needed in the area. We cannot say that the BZA's decision was arbitrary, capricious or an abuse of discretion.
The plaintiff-appellant also makes several procedural arguments with respect to the procedures in the trial court. First, it argues that the trial court did not properly set a return date for the administrative record and did not set a proper briefing schedule. But, it is apparent from the record below that the administrative record *21 was furnished in a timely manner and that the issues were thoroughly briefed by both sides to the trial court. Indeed, the plaintiff-appellant filed a motion for summary judgment.
Second, the plaintiff-appellant argues that the trial court improperly dismissed its claim for declaratory judgment. But, because the gist of the declaratory judgment action was the same as the plaintiffappellant's action for judicial review, i.e. the plaintiff-appellant sought a declaratory judgment to the effect that the BZA acted improperly in granting the variance, it necessarily was dismissed properly for the same reasons that the action for judicial review was denied. (We express no opinion on whether a declaratory judgment action is even proper in this context.)
Third, the plaintiff-appellant argues that the trial court improperly dismissed its action for injunction relief. But, because the injunction sought was to ban the French Eighth and Walgreen's from "illegal use" of the property at issue, the gist of this cause of action was that the BZA acted improperly in granting the French Eighth a variance to allow Walgreen's to use additional square footage. Thus, this claim for injunction necessarily was properly dismissed for the same reasons that the action for judicial review was denied.[1]
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] The plaintiff-appellant's claims for declaratory judgment and injunction also mention the possible issuance of an occupancy permit by the Director of Safety and Permits but no issue as to an occupancy permit has appeared as of yet and, of course, any possible issues as to an occupancy permit were not passed upon by the BZA.