liMAX N. TOBIAS, JR., Judge.
The Old Carrollton Neighborhood Association and other neighboring homeowners (hereinafter collectively “Old Carrollton”)[1] appeal the decision of the trial court to affirm the granting of a zoning variance by the Board of Zoning Adjustments (“BZA” or “the Board”) of the City of New Orleans to St. Andrews Episcopal Church (“Church”) to allow accessory use of a neighboring property with insufficient off-street parking. For the following reasons, we reverse.
The Church is located on South Carroll-ton Avenue in New Orleans. The Church, in an effort to expand to accommodate its growing congregation, purchased a house in January 2002 located across the street from the Church with the municipal address of 1031 South Carrollton Avenue to be used as a parish home and meeting hall. Prior to acquiring the property, on 13 July 2001, the Church applied for an accessory use variance to the BZA, so that the property could be used as a parish house and meeting hall. The matter was docketed by the BZA and was heard on 13 August 2001. A ruling on the application was deferred by the BZA at the 13 August meeting to September.
I ?On 14 September 2001, the Church amended its application, effectively withdrawing the request for an accessory use variance and replacing it with an application for a variance from the off-street parking requirements of the Comprehensive Zoning Ordinance (“CZO”) of the City of New Orleans. The application for the parking variance still identified the house at 1031 South Carrollton Avenue as the subject of the application.
Due to the revision of the application, the BZA assigned the matter a new docket number and slated it to be heard on 8 October 2001. At the 8 October 2001 meeting of the BZA, only four members of the seven-member Board were present.[2] Following lengthy testimony by individuals both opposing and supporting the application, a vote was taken on the application. Three Board members voted to approve the application, with one member abstaining from the vote. During the meeting, the following exchange occurred between the Board members:
VICE-CHAIR: Okay, we have a motion for approval [of the Church’s application] with seven provisos. Do we have a second? We have a second by Ms. Banks. All in favor signify by aye. Do we have any oppositions? Do we have any abstentions?
BOARD MEMBER: I am going to abstention (sic). I am just still not comfortable.
VICE-CHAIR: Let me ask then from the legal staff[:] will you tell us the status of this docket if we have an abstention?
STAFF: It won’t carry.
VICE-CHAIR: Okay, the motion will not carry. Therefore, because we *715 have one abstention (sic). |s Would you also share with the applicant and the audience what are the next steps that can be taken based on the fact that we have a motion that will not carry[?]
STAFF: Madam chair.
VICE-CHAIR: Yes.
STAFF: Since you don’t have a legal majority which, as you and I would both know, would be for an agreement, um, it would carry over to the next meeting.
VICE-CHAIR: Okay, so the motion will have to be ...
STAFF: I mean, it’s null and void — it’s not granted, it’s not denied. There’s no legal majority, correct?
VICE-CHAIR: Okay, so I just want to be clear and I want the audience to be clear that the fact that we have an abstention and there are only four members of the board here today is the reason that we will have to meet with and recover this information once again next month hopefully with five members.
BOARD MEMBER: Six.
VICE-CHAIR: Or, six. We could possibly have six.
BOARD MEMBER: Exactly.
VICE-CHAIR: Okay, thank you.
On 12 October 2001, the BZA issued a Notice of Disposition of Zoning Case. The notice addressed the request “to allow a parish home with insufficient off-street parking.” The body of the notice reads as follows:
Whereas the Board carefully considered the facts, the arguments for and against the application at the public hearing, and after considering the Comprehensive Zoning Ordinance No. 4265 MCS, as amended, the Board is of the opinion that the weight of the evidence indicates that in this special case all of the Standards for Variance of Article 14; Section 6.4 have not been met and therefore, |4for that reason, the request is hereby effectively DENIED relief from the Comprehensive Zoning Ordinance No. 4265 MCS, as amended, specifically as herein above stated.
The Board of Zoning Adjustments vote failed to pass with four (4) concurring votes — NO LEGAL MAJORITY. The Board has no legal majority for the motion that was offered (to grant); that means that the motion does not pass, but, neither is the waiver granted. It has the effect of denying the requested waiver even though the motion itself does not carry because the Board did not get four (4) votes for the waiver.
Further it is ordered that the decision of the Director of the Department of Safety and Permits be UPHELD and the PERMIT DENIED in accordance with this resolution. [Emphasis in original.]
The notice further lists the Board members present at the meeting and their respective votes on the matter. Finally, the notice is stamped at the bottom with a stamp reading:
DENIED
BOARD OF ZONING ADJUSTMENTS

[signed by Carla L. Major]

[VICE] CHAIRMAN
(The stamp is signed by Carla L. Major, the Vice-Chairman of the BZA at that time.) Accompanying the notice was a cover letter addressed to “Applicant” which, in part, advised the addressee that:
[i]f the request was DENIED, the same or substantially the same request may not be reheard until one year has elapsed. Additionally, the applicant has the right to appeal the ruling of the *716 Board within 30 days of the decision in Civil District Court.
In spite of the issuance of the 12 October 2001 notice, the matter was once again placed on the November docket. Prior to the meeting, correspondence was sent to the Chairman of the BZA by at least one neighbor of the Church who happened to also be an attorney, expressing concern that the rules of the BZA did 1 Bnot allow re-docketing of and re-voting on the application after the failed vote in October. These concerns were not addressed by the BZA, however; when raised again at the Board meeting on 12 November 2001, the application passed, with five votes in favor and one against,[3] effectively approving the variance request to allow a parish home at the property in question with insufficient off-street parking spaces. Thereafter, on 16 November 2001, the BZA entered its decision in the official record that the application was approved.
Following the approval of the variance by the BZA, Old Carrollton[4] filed a writ of certiorari with the Civil District Court for the Parish of Orleans, alleging that the BZA improperly and illegally granted the variance in violation of its own rules. It further appealed the decision of the BZA on the merits, contending that the BZA (1) did not have jurisdiction to grant the off-street parking variance; (2) made no findings of fact on which the decision to grant the variance could be based; and (3) adopted a clearly erroneous definition of the term “parish home,” thereby violating the Establishment Clause of the First Amendment to the United States Constitution and of applicable Louisiana law. Old Carrollton finally contended that the BZA acted with gross negligence, bad faith and/or malice in rendering its decision and further prayed for attorneys’ fees and costs. The Church filed an intervention in the trial court action.
The trial court, in a judgment dated 18 November 2002, upheld the actions of the BZA and affirmed the approval of the variance requested by the Church. Specifically, the trial court found that the-BZA did not abuse its discretion in 1 ¿finding that the property in question fell within the uses of a parish home or in granting the parking variance. Further, the trial court found that the BZA did not violate its own rules in entertaining the application on 12 November 2001, insofar as there was no denial of the application on 8 October 2001 and because it found that the provision disallowing re-hearings for one calendar year applies to appeals to the BZA, and not to applications for variances.
Old Carrollton asserts that the trial court erred in not overturning the decision of the BZA rendered on 16 November 2001 on the exact same grounds on which it based its writ of certiorari to the trial court. Foremost is.their contention that the BZA’s ultimate ruling was illegal as it was not properly before the BZA on 12 November 2001 after being denied on 8 October 2001.
Old Carrollton contends that BZA Rule Sections II(I) and III(K) provide that when an application is denied by the BZA, the same or substantially the same matter may not be reheard and/or brought back before the BZA for at least one calendar *717 year commencing from the date of denial. Appellants point out that a vote on the amended application was taken on 8 October 2001, the results of which are clearly indicated on the notice of disposition issued by the Board. They maintain that the Board is unable under its own rules to hold a second vote on an application that has already been denied by a legal vote of the Board. Further, they argue that the Board should not be able to disregard its own rules; to do so, they contend, essentially deprives the opponents of the application of due process.
The BZA rules provide that a quorum of the Board consists of four members and that a quorum must be present to constitute a legally held meeting of the Board. BZA Rule Section 11(F). Once a quorum is established, both the CZO of |7the City of New Orleans and the BZA rules provide that “[t]he concurring vote of four members of the Board of Zoning Adjustments shall be necessary to authorize a variance or special exception.” BZA Rule 11(F). See also, CZO Section 14.8.2. The transcript of the 8 October 2001 meeting on this matter reveals that a vote was taken on the application. At that meeting, although a legal quorum of four members were present, only three Board members voted in favor of the application by the Church. The remaining member of the Board abstained. Because the BZA rules provide that four votes are required to approve an application, there were insufficient votes to grant the application at the October meeting.[5]
The crux of the question is whether the vote that took place on 8 October 2001 constituted a “denial” of the matter such that the Board should have been prevented from re-addressing the same issue on 12 November 2001. BZA Rule II(I) provides, in pertinent part:
If the Board denies the appeal, a re-appeal or rehearing of substantially the same matter shall not be heard by the Board within one (1) calendar year commencing from the date of the denial....
Old Carrollton contends that this rule should have prevented the BZA from addressing the application just one month later in November 2001 and that the “reconsideration” of the issue was illegal under those rules.
The City of New Orleans and the Church argue that the provision disallowing a rehearing within one year of a denial does not apply to the Church’s application, because the BZA did not render a ruling on 8 October 2001. The City maintains that the motion to grant the variance did not carry because only three | ¿members voted affirmatively, but that regardless, a majority of the votes at the meeting were in favor of the motion, with no negative votes and one abstention. Therefore, they argue, a denial of the motion did not occur. They assert that the transcript clearly demonstrates that the constitution of the Board on 8 October 2001 was such that the “vote” on that day was a nullity and that the Board desired to take up the matter at a later date.
The City’s argument is tenuous at best. What the transcript of the hearing on 8 October 2001 reveals is that a vote was taken of the four Board members present regarding approval of the Church’s application with seven conditions. The motion was made to approve the application, seconded, and all were asked to signify their approval of the motion with an “aye.” It appears that all members of the Board so *718 responded, except for one member who declined to participate in the vote.[6] As such, there was a legally held vote on the motion properly brought before the Board. Further, the Notice of Disposition of Zoning Case issued by the BZA on 12 October 2001 is in the form of and constitutes essentially a judgment issued by the quasi-judicial entity on the Church’s application for variance, lending credence to the stance that a vote on the application was held and recorded by the BZA as required by law. See, French Quarter Citizens for the Preservation of Residential Quality, Inc. v. The New Orleans City Planning Commission, et al., 99-2154, p. 4 (La.App. 4 Cir. 4/12/00), 763 So.2d 17, 19; La. R.S. 33:4726(C)(1). Thus, there is nothing other than the exchange between the legal staff member and the Chairman of the BZA on 8 October 2001 at the board meeting to suggest that the vote that occurred on that day was, as the staff member put it, “null and void.”
IflThe vote on 12 November 2001 on the Church’s application was illegal and its result is null and void, contrary to the representation of the BZA legal staff. The vote was held in response to a “renewed” motion to approve the Church’s application:
CHAIR: ... What is the pleasure of the Board?
BOARD MEMBER: I offer renewal of the motion I made last month.
CHAIR: Okay. And your second is from Mrs. Banks as I understand it. Is there a need, once again I am going to question the Board as there as (sic) to whether or not there is a need for the seven provisos to be read or is there anything to be added to those provisos?
BOARD MEMBER: I am not adding anything so this renewal will be just as it was last month.
CHAIR: Motion was to grant or motion I should say is to grant. All in favor of the motion to grant please signify by saying aye, aye, any opposition to the motion? Is there anyone abstaining from the motion?
BZA Rule Section (II)(E)(1) provides that “[i]n the absence of any provision to the contrary, the rules of procedure provided by Robert’s Rules of Order shall prevail.” To the extent the BZA rules do not address the finer points of parliamentary procedure, Robert’s Rules of Order (10th ed.) apply. The BZA rules do not specifically provide guidance as to whether a second vote on a matter already decided by a legally held vote is proeedurally proper. This “renewed” motion is clearly an improper motion under parliamentary procedure, as outlined in Robert’s Rules of Order. RONR (10th ed.), p. 332, 1. 18-22. (“Likewise, motions are out of order if they conflict with a motion that has been adopted by the society and has |inbeen neither rescinded, nor reconsidered and rejected after adoption. Such conflicting motions, if adopted, are null and void unless adopted by the vote required to rescind or amend the motion previously adopted.”) Thus, even if the rules of the BZA allowed for a reconsideration of a denial of application for variance before the expiration of one year, which they do not, no proper motion to reconsider was made by any member of the BZA on 12 November 2001 on which a vote could le- *719 gaily take place.[7] Instead, the vote was taken on a motion that had already been made and dispensed with on 8 October 2001.
To disregard the vote that did take place on 8 October 2001 is a due process violation of the neighbors in opposition to the variance and gives the appearance that a certain result was desired by the Board. In fact, the appellants suggest in their brief that the Chairman of the BZA disregarded the applicable rules and procedures of the BZA in an effort to have the application pass. There is no evidence to convince us that this is the case; rather, due to a misinterpretation and misunderstanding of the BZA rules and procedures, the Board in taking a final vote on 8 October 2001 was bound by the decision taken on that day. When the motion to approve did not pass by at least four votes, it failed, and that decision became the decision of the BZA. The Board committed legal error when it addressed the matter at the 12 November 2001 meeting. In fact, we note that at the 8 October 2001 meeting, the Chairman was advised by the “legal staff’[8] that there were insufficient votes to approve the application and that the matter could be | ^rescheduled for the November meeting. Although this advice was in error, there is no reason to suspect that any member of the BZA intentionally disregarded the rules binding their conduct for the express purpose of favoring one side of this conflict over any other. We are certain, however, that the BZA rules as written were designed to eliminate not only impropriety by the Board but also the appearance of impropriety.
In fact, Robert’s Rules of Order provides the following regarding the importance to adherence to procedural rules:
An organized society requires certain rules to establish its basic structure and manner of operation. In addition, a need for formally adopted rules of procedure arises in any assembly, principally because there may be a disagreement or a lack of understanding as to what is parliamentary law regarding points that can affect the outcome of substantive issues.
RONR (10th ed.), p. 9,1. 35-36, p. 10,1.1-3. The risk of procedural gaffes affecting substantive issues is certainly borne out in the case sub judice; the improper second vote on the Church’s application changed the outcome of the dispute between the Church and Old Carrollton.
The City and the Church further argue that the matter was properly heard on 12 November 2001 because the CZO and the rules of the BZA clearly distinguish between applications for variances and “appeals.” They assert that the provision relied upon by Old Carrollton, BZA Rule Section II(J), applies to appeals and not requests for variances. An examination of the rules, however, does not reveal such a demarcation between procedures relevant to the handling of appeals and those relevant to the handling of requests for variances. The BZA rules are divided into four sections: Section I — Structure; Section II — Procedures; Section III — General Rules; and Section IV — Amendments. The procedures outlined in Sections II and 11{>IH do not subdivide further to impose separate procedural rules on appeals of decisions of the city’s Department of Safe *720 ty and Permits and applications for variances. If it is intended that there be separate procedural rules for adjudicating the two types of applications one might make to the BZA, the rules do not bear out that intent. In fact, we note that the notice and cover letter sent to the Church following the vote on 8 October 2001 reference the very rule the City now wishes to argue does not apply.
Finally, Old Carrollton prays for attorneys’ fees and costs on the grounds that La. R.S. 33:4727(E)(5) allows recovery for such damages in cases in which the Board acted with gross negligence, in bad faith, or with malice in making the decision from which the appeal was originally taken. We do not find that the Board acted with gross negligence, in bad faith, or with malice. It does appear that the members of the Board and the legal staff misunderstood and misapplied the procedural rules by which the Board was bound to act, but there is nothing to suggest any bad faith, malice, or conduct rising to the level of gross negligence. In fact, we note that the BZA entertained argument from numerous individuals in opposition to the variance, and attempted to give a platform to all interested parties at more than one meeting of the Board.
Because we find that the BZA improperly voted on the Church’s application on 12 November 2001, the approval of the application is null and void. Therefore, we do not address the actual merits of the Church’s application, as those additional assignments of error are moot. The judgment of the trial court is reversed.

REVERSED.

. Appellants are Old Carrollton Neighborhood Association, Carrollton/Riverbend Residents’ Association, Inc., Maple Area Residents, Inc., Nancy Turner, and Jacqueline Justice.

. The Charter for the City of New Orleans § 5-409 provides, in pertinent part, that "[t]here shall be attached to the Commission a Board of Zoning Adjustments to consist of seven members who shall be domiciled in and electors of the City, appointed by the Mayor with approval of the Council for five-year terms, staggered so that the term of one or two members shall expire each year.”

. We note that the Board member who expressed reservations concerning the application and abstained from the vote on 8 October 2001 was the sole negative vote on 12 November 2001.

. As noted previously, we use the term "Old Carrollton" to refer to all interested homeowners who participated in the filing of first the writ of certiorari and then the appeal to this Court, even though not all of the appellants are members of Old Carrollton Neighborhood Association. See footnote 1, supra.

. BZA Rule II(H)(a) provides, in pertinent part: "... Every appeal or application for variation or modification shall be disallowed unless the concurring vote of four (4) members of the Board shall favor the appeal or application....”

. We note that the abstention by the Board member on 8 October 2001 operated as a vote in opposition to the application for variance. See, City of Pineville v. American Federation of State, County, and Municipal Employees, AFL-CIO, Local 3352, 2000-1983, pp. 4-5 (La.6/29/01), 791 So.2d 609, 613.

. Neither does the record of the 8 October 2001 meeting indicate that a motion to reconsider was made on that date.

. The transcript does not give the identity or qualifications of the "staff' member who advised the Board regarding postponement of this issue, but the Chairman refers to the staff person in question as "legal.”