SUSAN M. CHEHARDY, Judge.
|2This is a zoning dispute. The property owners seek reversal of the district court’s judgment confirming the denial of their request for a zoning variance. We affirm.
FACTS
Stephen and Deborah McConnell are joint owners of 356 East Avenue in Hara-han. They applied for a building permit to erect a 20' X 20' X 12' steel building on an existing slab to replace a wood building destroyed by Hurricane Katrina. On February 2, 2006, the City of Harahan (hereafter “City”) issued the building permit.
Relying on the permit, the plaintiffs purchased a steel building at a cost of $6,000.00, to be erected on-site. They began constructing the building themselves.
On March 8, 2007 the City issued a stop-work order on the grounds that “constructing a Quonset building is not allowed in the City of Harahan,” and “the building permit required the replacement building to be a minimum of three feet from the property lines at the side and rear.”
After receiving the stop-work order, the plaintiffs removed any encroachment of the building closer than three feet from their property lines. They then applied to the City of Harahan Board of Adjustment and Appeals (“the Board”) for a zoning variance regarding the Quonset building.
|sThe Board discussed the plaintiffs’ application at meetings over the course of several months, and finally denied the variance on June 27, 2007 for the stated rea *18 son that the plaintiffs had not presented a proper Class C survey.
The plaintiffs appealed the denial of their request for a zoning variance to the district court.[1] After a hearing, the district court upheld the decision of the Board, in a written judgment that stated as follows:
[T]he Harahan Board of Adjustments and Appeals did not act arbitrarily and capriciously in denying the plaintiffs’ request for a variance whether the grounds for that denial be based upon the absence of a Class “C” survey or that the building that the plaintiffs attempted to construct on their property was a Quonset hut. The Court finds that in fact the structure meets the definition of a Quonset hut which is not a permitted use pursuant to Harahan’s Ordinance No. 1503.
In oral reasons for judgment, the trial judge explained to the plaintiffs:
The review that I am allowed to give is an arbitrary and capricious standard .... I don’t see that the Board of Adjustments was in any way arbitrary or capricious in rendering their opinion.... I don’t believe that the survey technically qualifies as a Class C survey. And I think the Board was certainly justified in taking the action that it did based upon those documents.
* * *
[T]he building was originally ordered in November 25th of '05.... The building permit wasn’t applied for until February '06.... The permit itself is quite clear, and it says: Steel building, 20 by 20 by 12, to replace old building on existing slab, electric and plumb.... The city ordinance is also very clear in its definitions of what is permitted and not permitted to be constructed. It defines Quonset hut as a structure building with a semicircular arched roof of corrugated metal.... Section 2 goes on to define the permitted type of buildings for accessory buildings.... Paragraph 6 of Section 2-F ... clearly states Quonset, free-standing non-framed buildings made entirely of corrugated galvanized steel panels are not permitted structures. Pure and simple.
|4It also goes on in Section 7 to describe the roof styles that are permitted for accessory buildings. And, for a garage, it’s flat, gabled, gambrel, hip, mansard, shed, or lean-to. And looking at all of the definitions in Section 1 of that ordinance, I don’t see where this building falls into any category other than Quonset.
* * *
It’s semi-circular, it’s a steel corrugated building with no interior walls, none whatsoever. It is the Court’s opinion that, based upon the city’s ordinance prohibiting Quonset huts, the very structure you attempted to place on your property, did, in fact, fall into that very technical definition.
The plaintiffs appeal.[2] They contend the district court erred in denying their appeal and that the Board’s denial of the variance was an abuse of discretion, be *19 cause the building does not violate the City’s zoning regulations and the basis for the stop work order is invalid.
LAW AND ANALYSIS
La.R.S. 33:4727(E) provides for judicial review of zoning appeals from municipal boards of adjustment, but it does not set out a standard of review. It states only, “The court may reverse or confirm, wholly or in part, or may modify the decision brought up for review.” La.R.S. 33:4727(E)(5). The jurisprudence holds that a reviewing court must generally accord a rebuttable presumption of regularity to the decisions of boards of adjustment. Gertler v. City of New Orleans, 346 So.2d 228, 233 (La.App. 4 Cir.1977), writ denied, 349 So.2d 885 (La.1977), cert. denied, 434 U.S. 1068, 98 S.Ct. 1248, 55 L.Ed.2d 770. Decisions of a board of adjustments are subject to judicial review only as to whether they are arbitrary, capricious or an abuse of discretion. French Quarter Citizens For Preservation of Residential Quality, Inc. v. New Orleans City Planning Com’n, 1999-2154, p. 3 (La.App. 4 Cir. 4/12/00), 763 So.2d 17, 18-19.
|5Section XXI(B) of the City of Harahan Zoning Ordinance provides in pertinent part as follows:
No amendment, supplement or change of the zoning ordinance . shall become effective unless and until:
⅜ ⅜
3. The applicant shall provide a “Class C” survey (plat plan) of the lot prepared by a civil engineer or land surveyor, licensed in the State of Louisiana, showing the actual dimensions of the lot; the size and location of any existing structure(s); servitudes and restrictions, and any such other information as may be necessary to provide for the enforcement of these regulations.
The plaintiffs contend that the Board’s cited reason for denying the variance, the necessity for “Class C” surveys for the issuance of building permits, is a red herring. They argue, first, that the requirement for submission of surveys appears as part of the requirements for submission of an application for a building permit; in this case, the building permit was issued, and the plaintiffs acted in reliance upon the issuance of the building permit. They point out the question of a Class C survey was not raised until them request for a variance was pending before the Board. The plaintiffs further contend that the survey they submitted was in fact a Class C survey, which is described in the Harahan zoning ordinance as “a plat plan of the lot prepared by a civil engineer or land surveyor licensed in the State of Louisiana showing the actual dimensions of the lot, the size and location of any existing structures.”
The Louisiana Administrative Code provides for classification of land surveys in categories that define the degree of accuracy that should be attained for surveys performed in Louisiana. La. Admin. Code 46:2901(A). These classifications are based on the purposes for which the property is being used at the time the survey is performed and any proposed developments disclosed by the client. Id. The categories include Class A, surveys that “require maximum surveying accuracy” including but not limited to “urban business district properties and highly developed commercial properties”; Class B, surveys “of properties that justify a high degree of |(isurveying accuracy” including but not limited to “commercial properties and higher priced residential properties located outside urban business districts and highly developed commercial areas”; Class C, *20 surveys of “residential and suburban areas,” including but not limited to “surveys of residential areas which cannot be classified as Class A or Class B surveys”; and Class D, surveys of “all remaining properties that cannot be classified as Class A, B or C surveys,” including but not limited to surveys of farm lands and rural areas. La. Admin. Code 46:2901 (A)(1)-(4).
The Harahan zoning ordinance stipulates that an applicant for a change in the zoning ordinance “shall provide a ‘Class C’ survey (plat plan) of the lot ... showing the actual dimensions of the lot; the size and location of any existing structure(s); servitudes and restrictions, and any such other information as may be necessary to provide for the enforcement of these regulations.” Harahan Zoning Ordinance, Section XXI(B). We have not been provided with any further information on how or whether the ordinance defines a Class C survey further.
In connection with their application for a variance, the plaintiffs submitted a copy of a 1990 survey, performed for a title agency by a professional surveyor, that showed the property’s dimensions, a servitude at rear of the lot, and the then-existing structures, including a building designated “garage” in the location at which the plaintiffs are erecting the building at issue here.
Although the survey the plaintiffs submitted appears to satisfy the ordinance’s description of a Class C survey, it is not a current survey and did not accurately reflect the state of the plaintiffs’ property at the time they sought their building permit or their zoning variance. Rather, it showed the property as it was |Tin 1990, when the survey was performed. It is uncontested that the garage shown on the survey was destroyed by Hurricane Katrina, which is the reason why the plaintiffs sought to build a new building in its place. Accordingly, we cannot say the Board was arbitrary, capricious, or abused its discretion in denying the variance on that basis.
Having found the variance validly denied, we need not address the issue of whether the building fits the definition of a Quonset building and thus is forbidden by the ordinance.[3]
*21 For the foregoing reasons, the judgment is affirmed. Costs of appeal are assessed against the plaintiffs-appellants.

AFFIRMED.

. The plaintiffs' petition also sought reimbursement for the expenses they incurred by their reliance on the building permit, specifically the cost of the building, as well as recovery for other damages incurred due to the incomplete construction of the building.

. The ruling disposed of only one of the plaintiffs’ claims, but the district court certified the judgment as a final judgment for purposes of appeal, pursuant to La.C.C.P. art. 1915(B)(1).

. The trial court went beyond the scope of the Board's decision in addressing and ruling on the status of the building. We do not rule on that issue because it was not a stated basis for the Board's decision. We note, however, that although the building varies somewhat from the ordinance's description of "Quonset building,” it fits the definition in other respects, and probably could have served as a valid basis for denial of the variance. The ordinance defines Quonset building as a "structure built with a semi-circular arched roof of corrugated metal,” and it prohibits "Quonset freestanding, non-frame buildings made entirely of corrugated galvanized steel panels." City of Harahan Ordinance No. 1333, as amended by Ordinance No. 1503 of the City of Harahan, adopted July 21, 2005, effective August 21, 2005.
The plaintiffs assert the building is not a Quonset hut as defined in the City's zoning regulations because it does not have a semicircular, arched roof of corrugated metal. Rather, they point to their Exhibit F, a photocopy of a brochure that contains photographs of the type of building the plaintiffs purchased. The building at issue does not have a semi-circular arched roof, but rather "a gently curved peak at the top where the sides of the roof join together,” while "the roof itself consists of flat panels rising diagonally from the walls to a peak at the top,” as well as showing buildings with semi-circular roofs that fit the City's definition of a Quonset building.
Our review of Exhibit F shows the building’s roof is a pitched or sloped gable-ended roof, the ridgeline of which is gently rounded rather than a sharp angle; the roof could be considered arched, but it is not semi-circular. Also in evidence are photographs taken by neighbors who opposed the granting of the variance, included within the City's Exhibit M, that show the building is built of corrugated metal panels, without an interior frame. That seems to place the building within the *21 prohibition against "Quonset freestanding, non-frame buildings made entirely of corrugated galvanized steel panels” in Section XVI-11(F)(6) of the zoning ordinance.