| | | |
|---|---|---|
| PILOTLAND NEIGHBORHOOD ASSOCIATION, WAYNE BAQUET, ASHLEY CAPONEGRO, RASHAD MEYERS, BILLIE CASTLE MYERS, AND IAM TUCKER | * | NO. 2025-CA-0563 |
| | * | COURT OF APPEAL |
| | * | FOURTH CIRCUIT |
| | * | STATE OF LOUISIANA |
| VERSUS | * * * * * * * | |
| THE CITY OF NEW ORLEANS, BOARD OF ZONING AND ADJUSTMENTS AND ENCAMPMENT, LLC | | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2024-02951, DIVISION "E-7"
Honorable Omar Mason, Judge
* * * * * *
**Judge Rachael D. Johnson**
* * * * * *

(Court composed of Judge Tiffany Gautier Chase, Judge Dale N. Atkins, Judge Rachael D. Johnson)


Keith Adam Doley
ATTORNEY AT LAW
1554 North Broad Street
New Orleans, LA 70119


     COUNSEL FOR PLAINTIFFS/APPELLANTS


Donesia D. Turner
CITY ATTORNEY
Shawn Lindsay
DEPUTY CITY ATTORNEY
CITY OF NEW ORLEANS
1300 Perdido Street
Suite 5E03
New Orleans, LA 70112

Nicholas J. Wehlen
STONE PIGMAN WALTHER WITTMANN L.L.C.

909 Poydras Street, Suite 3150
New Orleans, LA 70112


COUNSEL FOR DEFENDANTS/APPELLEES


**APRIL 30, 2025 JUDGMENT REVERSED;
FEBRUARY 28, 2024 DECISION VACATED
AND REMANDED
MARCH  4, 2026**

*RDJ*
*TGC*
*DNA*
Appellants, plaintiffs Pilotland Neighborhood Association ("Pilotland"), Wayne Baquet, Ashley Caponegro, Rashad Myers, Billie Castle Myers and Iam Tucker (collectively "Appellants"), seek review of the April 30, 2025 district court judgment affirming Appellee, defendant the City of New Orleans, Board of Zoning Adjustments' ("the BZA") February 28, 2024 decision, granting a variance to Appellee, defendant Encampment St., LLC ("Encampment"), to build a multi-family complex adjacent to the Pilotland Neighborhood. Finding the BZA erred in granting a motion for reconsideration and holding a second vote on Encampment's variance requests, we reverse the district court's judgment, vacate the BZA's decision, and remand this matter to the BZA to issue a decision in accordance with its initial February 19, 2024 vote denying Encampment's variance requests.

**FACTS AND PROCEDURAL HISTORY**

This is a zoning dispute arising out of Encampment's plans to construct a mixed multi-family housing development on a triangular-shaped lot it owns at 1100 Sere St. ("the Property") that is bounded by Encampment St. and Interstate 610 in

New Orleans. The Property is located in an Educational Campus District zone.[1] To construct its planned housing development and parking spaces on the Property, Encampment filed a variance request with the BZA requesting two waivers of the Comprehensive Zoning Ordinance ("CZO"): a waiver of the minimum lot area that would permit construction on 1.15 acres of land rather than 2 acres of land; and a waiver of the minimum parking spaces that would permit construction of 71 parking spaces instead of 75 spaces. Appellants are Pilotland, an abutting subdivision of the Property, as well as five Pilotland residents and domiciliaries, who oppose the variances due to their concerns about density, congestion, traffic and the inadequate lot size of the proposed development.

Prior to the hearing, the BZA's staff recommended approval of the lot size variance subject to two provisos, but opposed approval of the parking space variance.[2] On February 19, 2024, the BZA held a hearing on Encampment's

_____

[1] The Comprehensive Zoning Ordinance ("CZO") Rule 15 provides, in pertinent part, the following definition of an Educational Campus District zone:

> Commercial Center and Institutional Campus Districts represent the major destination areas within the city. They contain districts that address areas of commercial concentration and institutional campuses, and range from areas that are more pedestrian in orientation to those designed to accommodate significant parking demand. The types of commercial uses permitted within the Commercial Center and Institutional Campus Districts are based on a number of factors, including their proximity to residential areas, their location along major streets and the intensity of uses allowed within the districts. In addition . . . specialized districts for large-scale users are also destination centers, such as hospital and university campuses. Finally, in certain districts a mixed-use environment is permitted where higher density residential uses and vertical mixed-use is encouraged.

[2] The two recommended provisos for the lot-size waiver are:

> 1. Prior to the issuance of a building permit by the Department of Safety and Permits, the applicant shall submit revised site, floor, and architectural elevation plans of the subject site to the Board of Zoning Adjustments staff for review and approval. These plans shall reflect compliance with the Board of Zoning Adjustments as well as the standards and requirements of Article 4, Section 4.5 as indicated by the stamps of final approval of both the City Planning Commission and the BZA. These shall be the plans for which the building permit is issued.

3

variance requests. After taking public comments from Encampment's representative and some of the Appellants, BZA board member Tamara Agins moved to approve both of Encampment's proposed variances, subject to the two provisos suggested by the BZA's staff for the lot-size waiver. The motion was seconded by BZA board member Jason Richards. The motion failed by a vote of two yeas to three nays.

Immediately thereafter, Mr. Richards raised an "alternative proposal" or "alternative motion," which the BZA board chairperson Candice Richards Forest granted. Mr. Richards then re-urged the motion to grant the lot size variance subject to the BZA staff's two aforementioned recommended provisos and adding a third proviso to require a traffic study. He further moved to deny Encampment's parking variance. The motion was seconded by board member Todd James and was carried by a vote of five yeas to one nay. The BZA's decision, recording the second vote, was filed on February 28, 2024.

Appellants later lodged a Verified Petition for Judicial Review of the BZA's decision with the district court, averring the BZA's decision should be overruled because it was unsupported by the record and the BZA abused its discretion. Thereafter, Appellants filed an amended memorandum in support of their petition

---

2. The applicant shall provide a site plan and/or other documentation approved by the Department of Public Works indicating the following:

  o All necessary or otherwise proposed sidewalk repairs or modifications[.]

   • Note: Sidewalk material, dimensions, and style, including landscaping strips (where present) should generally conform to the style along the same block face, subject to the approval of the Department of Public Works[.]

  o Removal of all abandoned or nonconforming driveways and/or curb cuts in the adjacent public right-of-way, per City Ordinance Sec. 146-153.

   [•] Note: Curb cuts shall be restored with curbing matching predominant curb along the block face, subject to the approval of the Department of Public Works.

for judicial review, asserting that the BZA's decision should be overruled because it is procedurally improper and the BZA's initial vote to deny the variance should be upheld. However, the presiding judge recused herself and this matter was re-allotted from Division "N" to Division "E." Thereafter, on April 30, 2025, the district court rendered judgment, affirming the BZA's decision and issued Reasons for Judgment.[3] This timely appeal followed.

## ASSIGNMENTS OF ERROR

Appellants raise two assignments of error: the district court erred as a matter of law in finding that the procedure used by the BZA in voting upon the requested zoning variance a second time was proper, and the district court erred in affirming the BZA's erroneous ruling, finding that all nine of the criteria required to grant the requested zoning variance were met.

## STANDARD OF REVIEW

"Zoning is a legislative function, the authority for which flows from the police power of governmental bodies." *Racetrac Petroleum, Inc. v. City of Shreveport*, 45,120, pp. 6-7 (La.App. 2 Cir. 7/21/10), 44 So.3d 800, 805 (first citing *King v. Caddo Parish Com'n,* 97-1873 (La.10/20/98), 719 So.2d 410; and then citing *Prest v. Parish of Caddo,* 41,039 (La.App. 2 Cir. 06/02/06), 930 So.2d 1207). "Courts will not interfere with this legislative prerogative unless the zoning decision is palpably erroneous and without any substantial relation to the public health, safety or general welfare." *Id.*

BZA decisions are "afforded a presumption of validity;" however, "the presumption is rebuttable." *Esplanade Ridge Civic Ass'n v. City of New Orleans*, 13-

---

[3] The district court addressed Appellants' procedural and substantive assignments of error in its Reasons for Judgment.

1062, p. 3-4 (La.App. 4 Cir. 2/12/14), 136 So.3d 166, 169 (citations omitted). District courts have original jurisdiction to review decisions of the BZA. *Greer v. City of New Orleans Through Bd. of Zoning Adjustments*, 25-0320, p. 5 (La.App. 4 Cir. 11/26/25), 424 So.3d 1210, 1214. "The purpose of certiorari review by the district court of decisions of boards and quasi-judicial tribunals is to 'determine whether jurisdiction has been exceeded, or to decide if the evidence establishes a legal and substantial basis for the Board's decision.'" *Esplanade Ridge Civic Ass'n,* 13-1062, p. 3, 136 So.3d at 169 (quoting *Elysian Fields, Inc. v. St. Martin*, 600 So.2d 69, 72 (La. App. 4th Circ. 1992)).

When appellate courts review district court rulings on BZA decisions, the "reviewing court does not consider whether the [district] court manifestly erred in its findings, but whether the zoning board acted arbitrarily, capriciously or with any calculated or prejudicial lack of discretion." *Greer,* 25-0320, pp. 5-6, 424 So.3d at 1214 (quoting *King*, 97-1873, pp. 14-15, 719 So.2d at 418). Thus, on appellate review, this Court "owe[s] no deference to the factual findings or legal conclusions of the district court" and reviews the findings and decision of the BZA. *Our Lady of Lake Roman Catholic Church, Mandeville v. City of Mandeville, Planning and Zoning Commission*, 13-0837, p. 13 (La.App. 1 Cir. 2/3/14), 147 So.3d 186, 194 (citations omitted); *see also Robinson v. City of New Orleans*, 18-0032, p. 10 (La. App. 4 Cir. 5/16/18), 247 So. 3d 791, 798). Questions of law in zoning matters are reviewed under the *de novo* standard of review. *3000-3032 St. Claude Avenue, LLC v. City of New Orleans*, 22-0813, p. 8 (La.App. 4 Cir. 6/22/23), 368 So.3d 1160, 1168 (citation omitted).

**VOTING PROCEDURE**

Appellants assert that the district court erred as a matter of law in finding that the BZA's procedure used to vote on Encampment's requested zoning variances a second time was proper. They aver that a second vote taken by the BZA on a requested zoning variance was improperly taken as a motion for reconsideration, which is not included in the BZA's Administrative Rules, Policies and Procedures. Thus, Appellants argue that this Court must look to Robert's Rules of Order (sometimes hereinafter "RONR") pursuant to the BZA's own rules to review this issue. In response, the Appellees argue that this argument is not properly before our court as it is raised for the first time on appeal. We disagree in part with the Appellants and in whole with the Appellees.

Initial Raising of the BZA's Alleged Procedural Violation

As noted above, our jurisprudence requires this Court to limit its *de novo* review to consideration of the *BZA's decision*, not the district court's. *See Greer*, *supra*. Appellants, however, request this Court to review the district court's judgment. This request is improper. Instead, we interpret Appellants' assignment of error to mean that they seek review of the procedure the BZA utilized in granting Encampment's variance requests on a second and/or re-urged vote.

Moreover, we find the Appellees' argument that Appellants did not object to the amended or reconsidered motion at the BZA hearing by raising a timely point of order under Robert's Rules of Order or raise this issue before the lower court to be unpersuasive. "Appellate courts generally find it inappropriate to consider an issue raised for the first time on appeal that was not plead, urged, or addressed in the court below." *Vieux Carre Prop. Owners, Residents & Assocs., Inc. v. City of New Orleans Through Bd. of Zoning Adjustments*, 21-0687, p. 6 (La.App. 4 Cir. 4/6/22), 337 So.3d

7

979, 983 (citation omitted). Here, our *de novo* review of the record reveals that Appellants raised this procedural issue before the district court in their "First Amended Memorandum in Support of Petition for Judicial Review" filed on October 24, 2024. This is further evidenced by the district court's discussion of the procedural issue in its Reasons for Judgment.[4]

Although the Appellants' intent is to challenge the district court's rationale in finding the BZA did not procedurally err in its Reasons for Judgment, we review the Appellants' procedural objections to the BZA's decision *de novo,* in the interests of justice. *See* La. Code Civ. Proc. art. 2164.[5]

Initial Vote, Alternative Motion and Second Vote

As previously stated, Ms. Agins' initial motion, seconded by Mr. Richards, to grant both of Encampment's variances with provisos, failed. Mr. Richards then raised an alternative motion that Chairperson Forest granted. At that point, Mr. Richards successfully moved to grant Encampment's lot size variance subject to three provisos and to deny the parking variance. Mr. Richards's first motion was a

---

[4] Generally, appellate courts review district court judgments, not reasons for judgment. However, a district court's reasons for judgment give insight into the district court's rationale:

> It is a "'well-settled rule that the district court's oral or written reasons for judgment form no part of the judgment, and that appellate courts review judgments, not reasons for judgment.'" *Wooley v. Lucksinger*, 2009-0571, p. 77 (La. 4/1/11), 61 So. 3d 507, 572 (quoting *Bellard v. American Cent. Ins. Co.*, 2007-1335, p. 25 (La. 4/18/08), 980 So. 2d 654, 671). However, a court of appeal may review the trial court's reasons for judgment to "gain insight" into the trial court's judgment. *Id.*, 2009-0571, p. 78, 61 So. 3d at 572; *See also Double NRJ Trucking, Inc. v. Johnson*, 2017-667, p. 7 (La. App. 5 Cir. 5/16/18), 247 So. 3d 1125, 1131.

*Growe v. Johnson*, 20-0143, p. 6, n.3 (La.App. 4 Cir. 2/17/21), 314 So.3d 87, 93.

[5] Furthermore, our review the BZA hearing reveals that neither the Appellants, nor any members of the public, were given an opportunity to object to Mr. Richards' alternative motion and the second vote that ensued, which proceeded summarily.

motion to reconsider. However, for the reasons that follow, the BZA procedurally erred in granting his motion pursuant to Robert's Rules of Order. Thus, the BZA committed a legal error.

According to the BZA's Administrative Rules, Policies & Procedures relative to the "Conduct of Meetings," Sections II (J) and III (G) of the Rules state that a concurring vote of four (4) Board members is required to pass a variance or application. The denial of a motion to grant a zoning variance constitutes a denial of the variance. *Old Carrollton Neighborhood Ass'n v. City of New Orleans ex rel. Its Board of Zoning Adjustments*, 03-0711, p. 10 (La.App. 4 Cir. 10/1/03), 859 So.2d 713, 719 ("When the motion to approve did not pass by at least four votes, it failed, and that decision became the decision of the BZA.").

Encampment's variance requests were denied by the BZA's initial vote prior to Mr. Richards raising his alternative motion. Mr. Richard's alternative motion urged reconsideration of the failed motion to approve Encampment's variances. However, "[t]he BZA Administrative Rules, Policies and Procedures do not include procedural rules for reconsideration; therefore, we must look to Robert's Rules of Order." *Wolfman, Inc. v. City of New Orleans*, 03-0120, p. 5 (La.App. 4 Cir. 4/21/04), 874 So. 2d 261, 264; *see also Old Carrollton Neighborhood Ass'n v. City of New Orleans ex rel. Its Board of Zoning Adjustments*, 03-0711, p. 9 (La.App. 4 Cir. 10/1/03), 859 So.2d 713, 718; BZA Administrative Rules, Policies & Procedures, Section II(G)(1) and RONR (12th ed. 2020).

Section 37:1, *et. seq.*, of Robert's Rules of Order pertains to motions to reconsider, which is defined as a motion that:

> enables a majority in an assemby, within a limited time and without notice, to bring back for further consideration a motion that has already been voted on. The purpose of reconsidering a vote is to permit

correction of hasty, ill-advised, or erroneous action, or to take into account added information or a changed situtation that has developed since the taking of the vote.

RONR (12th ed.) 37:1.

Section 37 further provides in pertinent part:

37:3
The motion to *Reconsider* can, in general, be applied to a vote that either adopted or rejected a motion, and it proposed no specific change in a decision but simply that the original question be reopened. It is neither a main motion nor a secondary motion, but in certain respects it assumes the character of the motion to which it is applied (that is, the motion to be reconsidered), as will be seen below.

37:5
First, the mere making of a motion to *Reconsider*, when seconded by another member and acknowledged by the chair, has the effect of suspending, at least temporarily, any action growing out of the vote proposed to be reconsidered. . .

37:6
Second, the motion to *Reconsider* is considered by the assembly—either immediately after it is made or at some later time, depending on the parliamentary situation (see 37:14-17). Although at this state the motion to be reconsidered is not yet pending, debate on the motion to *Reconsider* (if it is debatable; see 37:18) can go fully into the merits of that question.

37:7
Third, if the motion to *Reconsider* is adopted, the effect is—to the extent practicable, and with certain exceptions—to place before the assembly again the question on which the vote has been reconsidered, in the exact position it occupied the moment before it was voted on originally. The original vote is thus canceled, and before, any new vote on it is taken, the question is again open to debate, amendment, or any other action appropriate in the case. If, however, the motion to Reconsider is rejected, the vote which it proposed to reconsider, as well as any action held up because of the proposed reconsideration, goes back into effect, just as though the motion to *Reconsider* had never been made. The same result occurs if the motion to *Reconsider* is dropped without having been voted on at all. (See 37:11).

RONR (12th ed.) 37:3-7.

Furthermore, Section 37 states that "to provide both usefulness and protection against abuse," a motion to Reconsider can be made only by a member who voted

10

on or with "the prevailing side" of the original vote. RONR (12th ed.) 37:8(a) and 37:10(a). "In other words, a reconsideration can be moved only by one who voted *aye* [or "yea"] if the [original] motion involved was adopted, or *no* if the motion was lost." RONR (12th ed.) 37:10(a). However, this did not occur in the instant matter.

Mr. Richards seconded Ms. Agins' motion that failed. He was not on the prevailing side—the "nay" side—of the first vote. Accordingly, he did not procedurally have the right to seek reconsideration of the failed motion pursuant to the applicable parliamentary rules.[6]

By improperly allowing Mr. Richards to raise a motion to reconsider, granting his motion and allowing a second vote on Encampment's variances to proceed, the BZA committed a legal error and deprived the public of having an opportunity for a fair hearing under the applicable parliamentary rules. "Procedural gaffes" can affect "substantive issues" by changing the outcome of zoning decisions. *Old Carrollton Neighborhood Ass'n*, 03-0711, p. 11, 859 So. 2d at 719. Disregarding a valid vote is a "due process violation of the neighbors in opposition to the variance and gives the appearance that a certain result was desired by the Board." *Id*., 03-0711, p. 10, 859 So.2d at 719. Here, the BZA's failure to abide by the parliamentary rules it selected may have given the public the mistaken impression that some members of the BZA desired to grant Encampment's zoning variances from the outset of the hearing, under the unique facts presented.

---

[6] We further note that pursuant to Robert's Rules of Order, Mr. Richards' motion to reconsider was not seconded nor considered by the BZA as whole before being granted by Chairperson Forest and proceeding to Mr. Richard's motion on the merits, that is to say the substance of what he sought to be reconsidered. This was also procedurally improper under RONR 37:5-6.

While the BZA's February 28, 2024 decision was presumed valid, our *de novo* review of this matter reveals it was not. The initial February 19, 2024 BZA vote remains in effect because Mr. Richards motion to reconsider was improperly granted. When an improper motion to reconsider is made, the BZA's initial vote on a motion remains valid. *Id.*, 03-0711, pp. 9-10, 859 So. 2d at 718-19 (holding that the BZA's vote on a motion to grant a church's zoning variance constituted a denial of the variance and therefore barred the BZA from rehearing same matter within one year of denial).

This procedural issue is dispositive of this appeal. Therefore, the Appellant's second assignment of error is pretermitted because it is moot.

## DECREE

For the foregoing reasons, the district court's judgment is reversed, the BZA's February 29, 2024 decision is vacated, and this matter is remanded to the BZA to issue a decision in accordance with its initial February 19, 2024 vote.

**APRIL 30, 2025 JUDGMENT REVERSED; FEBRUARY 28, 2024 DECISION VACATED AND REMANDED**

12